(Superior Court of Cincinnati.)
Special Term.

HAROLD EVERHARDT v. THE UNITED STATES INVESTMENT & REDEMPTION COMPANY a corporation organized under the laws of West Virginia, et al.

(1.) The trust relation of a corporation to its shareholders clearly exists in Ohio to the extent that a corporation, brought into court for an accounting by its creditors, may ask the instruction of the court as to its duties in the premises; and this principle is true whether the corporation be solvent or insolvent.

(2.) The state treasurer holding funds of a corporation deposited with him under the provisions of section 3821r, R. S., (amended April 14, 1900), is a trustee for the corporation and its creditors, with no beneficial interest in the funds; and in a proceeding in equity by the corporation as a trustee with respect to the distribution of its assets, which include the funds so deposited, the said treasurer is not only a proper but a necessary party.

(3.) Shareholders and creditors have the right to intervene in a suit for the winding up the business of issuing certificates or debentures by a corporation engaged in carrying on business in this state.

(4.) The courts of Ohio have jurisdiction to wind up that part of the business of a foreign corporation which is conducted in Ohio, and which has been interdicted by the laws of Ohio.

---

SMITH, J.

The defendant company is a West Virginia corporation, and claimed to be engaged in the business of "placing or selling certificates and debentures on the partial payment plan," and recognized itself as bound by section 3821r to 3821z of the Revised Statutes. This action was begun before the decision of the Supreme Court in the *State of Ohio, ex rel.* v. *The Interstate Savings & Invest. Co.,* 45 W. L. B., 297.

The plaintiff alleges that he is the owner and holder of two certificates of debenture issued by the defendant company, and that he brings this action on behalf of himself and all other holders of certificates of debenture who are entitled to and may desire to intervene and become parties to this action.

The petition then goes into a detailed statement at great length of the business of the defendant, which it claims to be illegal and fraudulent, and alleges that it is impossible to carry out the schemes of the defendant, and that it is now insolvent.

The prayer of the petitioner is as follows:

"Wherefore plaintiff prays that said defendant, the United States Investment Company, be restrained and enjoined from further prosecuting and carrying on its said business, of soliciting, through its agents or otherwise, the purchase and sale of said certificates of debenture, or from further receiving deposits of money to it from said certificate holders upon said alleged certificates of debenture, and that said defendant company be enjoined from distributing or otherwise disposing of any of its monies, securities, choses in action, or other property now in its possession; that in order to better preserve said assets, and hold the same subject to further orders of this court, that a receiver be appointed to take charge of, collect and distribute said assets; also, to do all other things necessary thereunto under the orders of this court, and for all other and proper relief as the plaintiff may in equity and in good conscience and the nature of its said causes be entitled to."

The defendant company filed an elaborate answer, setting out a detailed statement of its business, and in effect denied that its scheme was illegal or fraudulent, and denied that 't was insolvent.

E. H. Kuhlman, who is also the holder of certificates in the defendant company, was subsequently made a party defendant and filed an intervening petition, in which he made substantially the same allegations as were made by the plaintiff.

While the cause was pending the decision of the supreme court was rendered in the Interstate Savings and Investment Company case, previously referred to, and by consent of the parties the issues were referred to a referee. Meanwhile, the defendant company concluded that its business fell within the prohibition of the second paragraph of the syllabus in the Interstate case, and concluded that it was necessary to wind up its business. This conclusion of the defendant company was announced to the referee, who concurred in its correctness, and, at the request of all parties, filed a report to that effect with this court.

Subsequently the defendant company filed a supplemental answer and cross-petition, in which it alleges that there are ninety-five stockholders of the defendant company, setting out their names, holding 1,577 shares of stock; that by resolution of its stockholders, in general meeting assembled and subsequently assented to by other stockholders, more than a majority concurring, it was resolved to pray this court for permission to voluntarily liquidate.

Defendant avers that its liabilities are $98,-706.65, and that in said amount there is included as a liability of the company the initial fees paid upon 7,135 certificates, at $2.50 each, making a total of $17,837.50 and the initial fees on 573 certificates at $3 each, amounting to $1,719, or a total of $19,556.50; that at the time of the purchase of these certificates by the present holders it was understood by such purchasers that the initial fees were to be credited to the expense fund, and were not to be considered a liability of the company; that, in a great number of cases where certificates were sold without the intervention of an agent, this initial fee was not paid at all, but in such instance it has been charged as a liability against the company, and this defendant prays the court that the question of its liability on account of these facts be referred to the referee for examination and report.

By way of cross-petition, the defendant says that a large number of its certificates outstanding are held and owned by residents of the state of Ohio, upon which it has received large sums of money aggregating about $95,0000.

That it has deposited with Issac B. Cameron, treasurer of state of the state of Ohio, federal, state, county and municipal bonds of the face value of $42,900, which said bonds were so deposited with said Issac B. Cameron, as treasurer of state, for the protection of investors in said certificates who are residents of the state of Ohio, and which are now held by

him under and by virtue of the laws of the state of Ohio.

That on January 10, 1901, this company, in accordance with the laws of the state of Ohio, filed its report in detail with the inspector of bond investment companies, showing all the business transacted during the year 1900, and that February, 1901, two examiners were sent to the defendant company, who came to its office and took charge of its books, vouchers and records, and on the 11th day of March, 1901, the said supervisor issued a license to said company to continue business in this state until January,,1902. That on March 28 1901, such license or certificate of authority to do business in the state of Ohio was revoked by said supervisor, and that since that date this defendant had ceased to do said business of placing and selling said certificates in the state of Ohio and elsewhere.

That the amount on deposit with said Isaac B. Cameron, as treasurer of state of the state of Ohio, is one of its assets, and required in the payment of its outstanding certificates, and that the same belongs to its Ohio resident certificate holders.

That the number of certificate holders who are residents of the state of Ohio is large, and that it is impracticable to bring them all before this court, and that this defendant filed this answer and cross-petition on behalf of all such certificate holders who have a claim to such deposit. That the intervention of this court is necessary to ascertain the names of all persons having claims against such deposit and the respective amount due each; that it is unwilling to make payment from its funds without the instruction of this court, which it asks for, and that the accounting necessary to a final adjustment of the claims of creditors will be involved and complicated

That said Isaac B. Cameron, as treasurer of state, is a necessary party to this action, and that this defendant, therefore, asks that he be made a party thereto; that he be notified of the pendency and prayer of the petition, the answer of the defendant heretofore filed herein, and of the supplemental answer and answer and cross-petition.

That this defendant is desirous of modifying its answer heretofore filed in so far as it conflicts with the averments and allegations contained in the supplemental answer and answer and cross-petition.

Defendant further avers that its assets are sufficient to satisfy all of its debts and liabilities, and that it is willing to execute a good and sufficient undertaking, with surety acceptable to the court, that it will administer all of its assets in accordance with and under the direction of the court, if permitted so to do.

The prayer of the answer and cross-petition is as follows:

"Wherefore this defendant prays that said Isaac B. Cameron, as treasurer of state of the state of Ohio, be made a party hereto and notified of the pendency and prayer of the petition, answer, and answer and cross-petition herein, and be required to state the number and character of securities so deposited with him by this defendant, and that the court direct the referee heretofore appointed in this cause, to proceed without unnecessary delay to ascertain the names and residences of its certificate holders, and the amount which it has received from those who are residents of the state of Ohio, and that the securities where the court may find to be in the custody of said treasurer of state may be ordered sold and the proceeds thereof be distributed in accordance with the order of this court, and for such other and further relief to which it and all of its certificate holders, who are residents of the state of Ohio, and all others, may be entitled."

Isaac B. Cameron, treasurer, was thereupon made a party defendant, and summons issued on a supplemental answer and cross-petition of the defendant against him.

Subsequently two other certificate holders, viz. Joseph A. Niehaus, who is also a shareholder in the company, and B. A. Brinker, by leave of court, were made parties defendant, and each filed an intervening petition substantially similar in their allegations.

They alleged that the questions involved in this action are of common and general interest to many persons, and that it is impracticable to make all of the parties in interest parties to this action, or bring them all before this court as defendants herein, and they therefore file their cross-petitions on behalf of themselves and all the holders of certificates of the issue of the defendant company who are entitled to an interest in the funds described, as well as those who may desire to intervene and become defendants in this action.

They allege that they are the owners and holders of certain certificates of debenture of the defendant company, and they proceed to give a more or less detailed statement of the scheme which the defendant company was organized to carry out.

They further say that the defendant company has issued, and that there are now outstanding in force, 7,708 certificates, which are held by some 550 or 600 persons; that all of them

are now parties; that all have an interest in the funds which are now in the control of the company, as well as those which are in the custody of Isaac B. Cameron, treasurer of state, and that on behalf of all such certificate holders this action is brought.

They further say that the defendant company has on deposit with Isaac B. Cameron, treasurer of state, federal, state, county and municipal bonds of the face value of $42,900, which said bonds were deposited with said Isaac B. Cameron as treasurer of state in accordance with the laws of the state of Ohio, to be held by him in trust for the protection of the investors in said certificates who are residents of the state of Ohio.

That the defendant company, in addition to the amount on deposit with Isaac B. Cameron, treasurer of state, is possessed of cash to the amount of $22,500, and about $21,000 other securities, which said company holds in trust for these cross-petitioners, and for all of its holders of certificates, and that the total amount which is so held in trust for all of such certificate holders is $83,686.81.

That the assets in the custody of the defendant company are insufficient to pay all of its obligations, but that if the same are assembled and gathered together, and economically administered, they will, in connection with that which can be realized from the solvent stockholders, prove to be nearly or equal to the amount of its liabilities.

That the inspector of bond and investment companies, on March 27, 1901, revoked the license of the defendant company to do business in the state of Ohio, and that on April 25, 1901, at a general meeting of the stockholders of the defendant company, it was resolved to go into voluntary liquidation, and to apply its assets in the discharge of its liabilities.

That the defendant company has ceased doing business, and that these defendants are entitled to have their interests in said funds ascertained, and the funds in the possession of said defendant company, and those in possession of Isaac B. Cameron, treasurer of state of the state of Ohio, applied, under the direction of this court, to the payment of their claims, and those of all the certificate holders of the defendant company; that the defendant company refuses to distribute its assets except under the order of the court; and they further allege that the accounting necessary to an adjustment of the rights of all parties is involved and complicated.

The prayers of the intervening petitions are as follows:

"Wherefore this defendant joins in the prayer contained in the amended and supplemental answer of the defendant company, and prays for a judgment for the difference between the amount which he has received from the company and that which he has paid to it, together with interest upon such balance from such time as the court may hold him and all other certificate holders o fthe defendant company to be entitled. That the defendant company, through its officers, may be permitted to wind up its affairs under the direction of the court, and that a referee or master commissioner be appointed to ascertain the names of the holders of certificates which have been issued by it, the date of such issue, the amount paid by each of such holders; the amount which each of such holders may have received by redemption or otherwise, and the balance due to such holders or to the company, if such holder has received a sum in excess of the amount paid by him to said company. That Isaac B. Cameron, treasurer of state of the state of Ohio; Harold Everhart, E. H. Kuhlman and The United States Investment and Redemption Company be made parties defendant hereto, and notified of the pendency and prayer of this cross-petition, and that said plaintiff and said intervening petitioner, E. H. Kuhlman, be required to set up what interest each has or claims to have in the cash and securities above described, and that said Isaac B. Cameron, treasurer of state of the state of Ohio, be compelled to answer and describe the securities which are held by him in trust for the certificate holders who are residents of the state of Ohio, and for an order compelling him to distribute the same in accordance with the judgment of this court, and for such other and further relief to which this cross-petitioner and all other holders of certificates of the issue of said defendant company may be entitled."

The said Isaac B. Cameron, treasurer of state, has filed demurrers to the answer and cross-petition of the defendant company, and to the intervening petitions of Niehaus and Brinker on the ground that they did not state facts sufficient to constitute a cause of action against him. The questions to be decided at this time are whether such demurrers are well taken.

It was originally provided in section 3821r, Revised Statutes, that every corporation, partnership and association other than a building and loan company, doing in this state the business of placing and selling certificates, bonds, debentures or other investment securities of any kind or description on the partial payment or installment plan, and every investment guaranty company doing business on the ser-

vice dividend plan should, before doing business in Ohio, deposit with the state treasurer $25,000, either in cash or bonds of the United States, or of the state of Ohio, or of any county or municipal corporation of the state of Ohio, for the protection of the investors in such certificates, debentures or other investment securities. And, in addition thereto, the said company, partnership or association should, on or before the 10th day of January of each year, deposit wih the said treasurer, either in cash or bonds of the United States, or of the state of Ohio, or of any county or municipal corporation in the state of Ohio, ten per cent. of the gross receipts on the amount of business done by it in the state of Ohio for the twelve months next preceding the 31st day of December; the said deposit to be made each year as aforesaid until the total amount of such cash or bonds so deposited should be worth $100,000.

*But on April 14, 1900, this law was repealed* and there was enacted in its place the following (94 v., 147):

"Section 1. That every corporation, partnership and association other than a building and loan company, which shall hereafter commence, in this state, the business of placing or selling certificates, bonds, debentures or other investment securities of any kind or description, on the partial payment or installment plan, and every investment guaranty company doing business on the service dividend plan shall, before doing business in Ohio, deposit with the state treasurer one hundred thousand dollars in cash or bonds of the United States, or of the state of Ohio, or of any county or municipal corporation in the state of Ohio, for the protection of the investors in such certificates, debentures or other investment securities. Such deposit of one hundred thousand dollars shall be made out of the paid-up capital stock of such corporation, partnership or association. And every corporation, partnership or association now doing business in the state of Ohio shall, in addition to the amount now on deposit with the state treasurer by such corporation, partnership or association, on or before the 10th day of January of each year, deposit with the state treasurer, either in cash or bonds of the United States or of the state of Ohio or of any county or municipal corporation in the state of Ohio, an amount equal to ten per cent. of the gross receipts on the amount of business done by it in the state of Ohio for the twelve months next preceding the 31st day of December; and the said deposit shall be made each year as aforesaid until the amount of such cash or bonds so de-

posited shall amount to one hundred thousand dollars; *provided,* every such corporation, partnership or association now doing such business in the state of Ohio shall have on deposit with the state treasurer not less than twenty-five thousand dollars out of its paid up capital stock. The deposit made with the treasurer shall be held as a security for all claims of residents of this state against such corporation, partnership or association, and shall be liable for all judgments or decrees thereon, and subjected to the payment of the same in the same manner as the property of other non-residents. Should any such corporation, partnership or association cease to do business in this state, the treasurer may release securities, retaining sufficient to satisfy all outstanding liabilities."

From the supplemental answer and cross-petition of the defendant company, it appears that the company has resolved to wind up its *affairs; that while it claims to be solvent and to* be able to pay its creditors from its assets, its solvency is doubtful, depending upon the question whether its certificate holders are entitled to interest upon their claims; and upon other questions, upon all of which it asks the instruction of the court.

Assuming that the corporation is solvent, can it maintain its cross-petition against Cameron, treasurer?

It appears from this cross-petition that the company has ceased to do business, and that it intends to wind up its business; that by reason of difficult questions of law arising in the distribution of its assets, it can not, with safety, make such distribution without the orders of the court, and that the accounting between it and its creditors is involved and complicated.

There has been much dispute of late years over what has been said to be the trust theory of the relation of a corporation to its shareholders and creditors. Without now undertaking to enter upon that field of discussion, I feel entirely safe in saying that it is settled in this state that such relationship does exist to the extent that a corporation which is brought into court for an accounting by creditors may ask the instruction of a court as to its duties in the premises, on the well-settled principle that a trustee in doubt as to his powers may solicit and receive the instructions of a court of chancery with respect to the same. In 2 *Perry on Trusts,* section 928, it is said that "a trustee can not be expected to incur the least risk in the distribution of the trust fund. Therefore, where there is a mere shadow of doubt as to the rights of the parties, the

trustee may bring the parties claiming an interest in the trust before the court by bill, and the questions in dispute will be determined by the court and the trustees protected by the order of the court. The suit in such cases may be instituted by the trustee himself asking for the direction of the court, or parties claiming to be the *cestui que trust* may institute the suit against the trustee and others claiming to be the *cestui que trust.*" And in this state this principle was applied to a corporation by reason of the trust capacity in which it holds its property. Thus in *Wiswell* v. *First Congregational Church,* 14 Ohio St., 31:

"The action was brought by the plaintiff on behalf of himself and others as pew owners and members of the First Congregational Church of Cincinnati, to restrain the trustees of the church from selling its real estate and dividing the proceeds thereof, in pursuance of certain resolutions alleged to have been adopted at a meeting of the corporation. * * *

"The answer of the trustees of the First Congregational Church was made up mostly of a recital of the proceedings of the members of that church at meetings convened for the purpose of considering the matters involved in the action, and gave a copy of the resolution in these words: 'Resolved, That the trustees be instructed to enter their appearance in the court of common pleas in the suit brought by William Wiswell, Jr., against them and others, and ask that court to give judicial sanction to, and to direct the trusts of the charter to be carried out by such sale and division.'"

In determining that the court had jurisdiction to entertain an answer and counter-claim such as was filed by the trustees of the church, the court, in the tenth paragraph of the syllabus, declared:

"A trustee in doubt as to his powers has the right to apply to a court of equity to define them, and give judicial sanction to his acts, but in such case the court will only define the trusts, and will not order a sale of property where no adverse right is asserted."

And on page 43 in the opinion it appears that such principle is applicable to a corporation which is a trustee as well as to an individual, for it is there said:

"By the terms of the charter this corporation is expressly made the trustee of the property for the church, and we do not deem it important to consider whether the judgment asked upon the counter-claim is more properly demandable under the provisions of the act of 1883, or stands upon the general doctrine in equity, which allows a trustee in honest doubt as to his powers to apply to a court of equity

to define them and give judicial sanction to his acts. It may well rest upon either, but neither will authorize us to go farther than to define the trusts upon which the property is held and to sanction and authorize what is proposed to be done. No adverse right is asserted to this property which would authorize us to order a sale. We can only restrain the illegal acts of the corporation, or authorize or sanction the performance of those which are legal."

But in the case at bar, inasmuch as adverse rights are asserted to the property of the corporation, this court, under this decree, will be authorized to order a sale.

In the case of *Wiswell* v. *First Congregational Church,* it was not claimed that the corporation was insolvent. It was undoubtedly solvent. Yet the court held that as the corporation held the property as a trustee, it had the right to seek the advice of the court with respect to this trust.

If a corporation, then, when solvent, has the right to seek instruction as was decided in *Wiswell* v. *Church,* is not the jurisdiction of chancery strengthened, if I may use that term, by the fact that it has decided to cease business, and that it can not safely distribute its assets without an accounting of involved and complicated accounts?

If, however, in this case it shall turn out that the corporation is insolvent, the fact of such insolvency, coupled with the fact that the corporation has ceased to do business, makes still stronger the relationship of trustee and *cestui que trust* between the corporation and its creditors, and gives additional reason why the corporation may ask the advice of the court on doubtful questions involved in the distribution of its assets, as well as its action in ordering such distribution.

In *Rouse, trustee* v. *Merchants' National Bank,* 46 Ohio 504, our Supreme Court said:

"It being established that the corporate property is a trust fund for the benefit of the corporate creditors, it follows that after the insolvency of the corporation is ascertained, and the objects of its creation are no longer pursued, the managing board of directors then having the custody of the property become trustees thereof for the creditors."

In the case of *Cheney* v. *The Maumee Cycle Company et al.,* 20 C. C., 19, the court said (page 23), with respect to a corporation which had become insolvent:

"Now, that being the condition, we see no reason why a court of equity may not have jurisdiction of the trust property for the purpose of preserving it and disposing of it for

the payment of the creditors of the corporation. It was the duty of the directors, upon the happening of this event, which showed that the corporation was insolvent and not further proceeding to perform its functions or duties, to take such steps as would protect this property and convert it into money and apply the proceeds to the payment of the creditors, pro rata, to all creditors alike, and if they failed to perform the duty thus incumbent upon them, we see no reason why a creditor could not invoke the jurisdiction of a court of equity to have the property applied in the manner and for the purpose for which it was the duty of the directors to apply it."

The state treasurer in this case holds the money deposited with him merely as a trustee for the corporation and is creditors. He had no beneficial interest in the fund, and in a proceeding in equity by the corporation as a trustee with respect to the distribution of its assets, which include money in the hands of the state treasurer, he is not only a proper party, but a necessary party, because the orders of the court, would not bind him unless made a party These propositions are elementary (*Miles v. New South Building and Loan Association,* 99 Fed., 4).

I come now to consider the demurrers to the intervening petitions of Niehaus and Brinker, creditors of the company, one of whom, Niehaus, is also a shareholder. In considering these demurrers, it is well to bear in mind the facts as they are alleged in the pleadings of the case. These facts may be summarily stated to be as follows:

1. Niehaus, is a shareholder and a creditor; Brinker is a creditor.

2. The corporation is insolvent, and has ceased to do business, and is desirous of winding up its affairs.

3. It refuses to distribute any of its assets without an order of the court, being in doubt as to the proper distribution to be made.

4. The accounting is involved and complicated.

5. The state treasurer holds, as trustee, certain funds deposited with him by the company to secure its resident certificate holders.

Let us consider, first, whether Niehaus, as a shareholder, can, under such circumstances, maintain such an action as is sought to be maintained by his intervening petition, premising such inquiry by the statement that in none of the proceeding sought to be instituted here is the *dissolution* of the corporation sought, but merely the winding up of the business of issuing certificates or debentures which it has been engaged in carrying on in Ohio.

The proposition is well settled that—

"Whenever, in the course of events, it proves impossible to obtain the real objects for which a corporation was formed, or when the failure of the company has become inevitable, it is the duty of the company's agents to put an end to its operations and to wind up its affairs. Under these circumstances the majority would have no right to continue to use the common property and credit for any purpose, because it would be impossible to use them for any purpose authorized by the charter. If the majority should attempt to continue the company's operations in violation of the charter, or should refuse to make a distribution of the assets, any shareholder feeling aggrieved would be entitled to the assistance of the courts, and a decree should be made ordering the directors to wind up the company's business and distribute the assets among those who are equitably entitled" (*Morawetz on Corporations,* sections 284, 285).

And in section 412, the same writer, referring to this rule, says:

"It is well settled that a corporation may be dissolved under similar circumstances by any one of its members, although the partnership agreement provides that the company shall continue for a definite term of years, and the rule applicable in the case of co-partnership has been held to be equally applicable in case of a corporation or joint stock company. The reasonableness of this doctrine requires no comment; it is a protection to the creditors and to the public when applied to companies whose shareholders are not individually liable for the corporate obligations, and it is in all cases a protection to the individual shareholders against unfair dealing on the part of the managers of their company, or the majority."

Nor does this right of a shareholder depend upon the statute, but it is founded upon principles of equity which courts of equity will enforce. Thus *in re Suburban Hotel Company,* (Law Reports, 2 Chancery), a shareholder in the company had made application for the winding up of the defendant company. In that case Lord Cairns, in the course of his judgment, said:

"It is not necessary now to decide it, but if it were shown to the court that the whole substratum of the partnership, the whole of the business which the company was incorporated to carry on, has become impossible, I apprehend that the court may either, under the act of Parliament or on general principles, order the company to be wound up."

In *Cramer v. Bird,* 6 Law Reports, Eq., 143, a suit by a shareholder in the St. George

Harbor Company, on behalf of himself and all other shareholders of the company, seeking to make the directors liable to account for monies which they had received, and to obtain a distribution of the assets among the share-holders, Lord Romley, M, R., said:

"I am of the opinion that the plaintiff is entitled to a decree, but at present I think the bill is wrongfully constituted as regards the parties.

"The case may be stated thus, assuming for a moment that no act had been passed for winding up of companies: An act is passe1 enabling certain persons to form a railway and harbor, and they are constituted a corporation for making and maintaining that railway and harbor. By a second act, their powers are extended. They are unable to carry on their works, and a third act is passed, reciting that their powers had become extinct, and authorizing the transfer of their undertaking to another company, which is accordingly effected; the property is sold, and after providing for all the liabilities of their own company, the directors have a balance of several thousand pounds in hand. Can it be said that there is no remedy, and that they are entitled to keep this money for themselves?

"The proposition amounts to this: That unless the act of Parliament gives a remedy, there is none. I consider that they are trustees for the members of that body, which was once a corporation, but which has become extinct, and this court, making all due and just allowance to them, may call on the directors to pay the money, and divide it among the persons entitled, as though no winding-up act had ever passed.

"This case does not, in my opinion, come within the 199th section of the Companies Act, nor within the Railways Abandonment Act, or the Railway Companies Act. None of these acts were intended to supersede the principles of equity, but only to assist the court by giving additional power to enable persons to enforce equities without those peculiar difficulties arising from the number of shareholders and from the rules of equity which theretofore had made it impossible for persons in such cases ever to get a decree. I am of the opinion that there can not be a plainer equity than this, that where the functions of a corporation have ceased the managers of that corporation are bound to account for all monies belonging to the corporation, and when such monies are improperly retained this court will make a decree in order that they may be divided among the various members."

It may be said in criticism of the pertin-ency of these citations that in both cases the association refused to wind up its business, whereas in the case at bar the defendant company is willing to wind up. But it may be said, in answer to this criticism, that while it is willing to wind up its affairs, it is not willing to make any payments to creditors until ordered to do so. In the cases cited the company insisted on going forward. In the case at bar it insists, so far as the allegations of the intervening petitions are concerned, on standing still. The result in both cases is the same—the refusal to pay the creditor the amount due him.

I come next to consider the intervening petitions of Niehaus and Brinker as creditors. Bearing in mind the summary heretofore made as to the allegations of the petition, the two cases of *Stamm* v. *The Northwestern Mutual Benefit Association*, 65 Mich. Rep., 317, and *Fogg* v. *Supreme Lodge of the Golden Lion*, 156 Mass., 431, are directly in point.

In the former case the Mutual Benefit Association was organized under the laws of Michigan, and continued to exercise its corporate powers until the summer of 1883, when the commissioner of insurance refused to license it, in which decision the officers of the corporation acquiesced, and ceased to admit new members, or to take or transact new business looking to a continuation of corporate business. At this date the membership of the association numbered about 2,200, and assessments for death losses were thereafter made, and members failing to respond were considered as having forfeited their membership. After the commissioner's refusal to license, a new corporation was formed under the same name by those active in the management of the old association, which was licensed to do business, and into which many of the members of the old association entered at the request of its managers. A fund of some $50,000 had accumulated belonging to the old association, certain members of which had filed a bill to wind up its affairs and distribute the fund among the members according to their respective rights and interests therein. The foregoing is an outline of the main facts in the case.

A bill was filed for and on behalf of themselves, and all other members of the endowment division, and prayed:

1. That the affairs of the association may be wound up.

2. That said endowment fund may be apportioned and distributed among the members of said endowment division according to their respective rights and interests therein.

3. That said association and the officers and agents in charge thereof may be decreed and required to pay to complainants, and to each of them, the amount due them, respectively, from the funds of the association.

4. That a receiver may be appointed to take possession of the endowment fund and all other assets of the association.

5. For general relief.

The court, in the course of its opinion sustaining the bill, said:

"We have here, then, the case of a corporation which circumstances have rendered it impossible to continue to carry on its business successfully, or to attain the object for which it was formed. It has a large fund in its hands which can not be applied nor used to carry out the original intent for which it was accumulated, and it would appear to be the obvious duty of the managing agents, under the circumstances, to wind up the affairs of the concern voluntarily, under the statute, and, if they neglect to do so, any one interested in the fund may seek relief in a court of equity to obtain a distribution among the members to whom it belongs. * * *

"The doctrine is clearly established that courts of equity have no jurisdiction, unless it be conferred by statute, to decree a dissolution of a corporation by forfeiture of its franchise, either at the suit of an individual or the state. But this suit is not instituted for the purpose of forfeiting the franchise of the corporation. Its existence is recognized, but facts are set forth showing an actual or threatened misapplication of its funds, and also a virtual surrender of its franchise of admitting new members. Although a court of equity may decree a dissolution of the corporation, yet, in virtue of its general jurisdiction over trusts, and to afford remedies in cases where courts of law are inadequate to grant relief, it has jurisdiction to grant relief against a corporation upon the same terms it might against an individual under similar circumstances. * * *

"Upon principle as well as upon authority, I think that when a corporation is virtually dead, although its term of existence limited by law has not expired, and it has property and assets which can not be used in carrying out the purposes of the corporation, remaining in the hands of the corporation, this court had jurisdiction to distribute such property and assets among its members upon such a basis as shall be just and equitable. * * *

"These facts show the necessity for the interposition of a court of equity to prevent a further misapplication of the funds of the old association, and to decree an equitable distribution thereof. Otherwise what is to become of this large accumulation of money now in the hands of the trustees? The new association is not entitled to it. The trustees have no right to appropriate it. It cannot be used in carrying out the purpose for which it was created. * * *

"The inhibition of the statute, extended to the exercise of corporate functions in Michigan. Its proceedings as a corporation were arrested, and as no steps were taken by it to obtain the right to do business any longer, but on the contrary it abandoned the field, the proceedings to close its affairs should date from that time. The members were entitled to their distributive share of the monies on hand from that time. * * *

"An account will be taken to ascertain the persons entitled, the amount of funds on hand at the time license was refused, and the pro rata due to each members."

In the case of *Fogg* v. *Supreme Lodge of Golden Lion* and others, the bill was brought by certificate holders of the defendant corporation seeking for an injunction and a receiver. The defendant was a Massachusetts corporation, incorporated for the purpose of doing an insurance business as provided by the statutes of that state. After deciding that the scheme of the company was at least impracticable, if not to say fraudulent, the court proceeded to say:

"It is desirable, in the present position of things, that this branch of the defendant corporation's business should be wound up, at least so far as to distribute the fund on hand among the present certificate holders. * * * * * One of the weaknesses of the system is that the moment such a corporation ceases to gain, as sooner or later it must, it begins to lose. The present certificate holders can not hope to be helped at the expense of future ones, because now it no longer is to be expected that others will join the concern, so that the only alternative is to allow the game to be played out to the end or to divide the funds. * * * *

"Unlike most cases, the consideration furnished by the plaintiffs is in the main a fund which the defendant corporation was to keep identified, and hold in trust for distribution among the policyholders when the time came. The fund is expressly called a trust by the statute . It seems to us, therefore, that the plaintiffs are entitled to stop where they are, and to refuse to pay further assessments under their certificates without incurring a forfeiture, and to come into equity for distribution of the fund which they have created. It is found, if that

be material in such a case as this, that all proper efforts to obtain relief in the order have been made, and have failed. * * *

"The decree appointing a receiver, and ordering a distribution of the funds now held by the defendant corporation in the endowment benefit business, is affirmed."

I am not aware of the rule that ordinarily the creditor of a corporation will not be allowed to bring suit in equity against a corporation to subject its assets to the payment of his debt until he has obtained a judgment at law and issued execution upon which there has been a return of *nulla bona.* But there are exceptions to this rule, and it seems to me the case, such as is presented here, is one of the exceptions. .

We have seen that the assets of this corporation, which is insolvent, and has ceased business, under the decision in *Rouse, trustee,* v. *The Merchants' National Bank,* are held by the corporation in trust for the corporate creditors. It is declared in that case that "the due execution of the trust demands absolute impartiality toward the *cestui que trustent.*" No creditor, by securing a judgment, would be allowed to appropriate any of the assets to the payment of his claim. His only remedy must, therefore, be in equity against the trustee to distribute, where, as in this case, the trustee refuses to make distribution without order of the court, and where an accounting is necessary to determine the rights of all parties.

As both Niehaus and Brinker, therefore have the right to have the business of this company wound up in a court of equity, all persons holding assets of the company, including Cameron, treasurer, are not only proper, but necessary parties to the case.

It is true that in the Cincinnati Life Association case our supreme court held that the Cincinnati Life Association could not, by an assignment in insolvency, transfer the possession of the funds in the hands of the state treasurer to the assignee, nor could a receiver of the association company take possession of such funds, because the state treasurer held them as a trustee. But the state treasurer, holding funds as a trustee, is not a law unto himself. He is not above all law. In the administration of his trust he is subject to the jurisdiction of a court of chancery, and it would seem that in place of opposing the proceeding of this kind, he would welcome it as one that would settle the rights of all claimants to the fund, and thus completely protect him in its distribution.

The proceeding, too, by making the corporation and the treasurer both parties, avoids a multiplicity of suits, and it prevents any possible doubt of payment to the same resident creditors, once out of the assets in the hands of the corporation, and again out of the funds in the hands of the treasurer.

It is urged for Cameron, treasurer, that under the concluding paragraph of section 1 of the law of April 14, 1900, the funds deposited with him can only be subjected to payment of judgments recovered by resident claimants, and that as the resident claimants against this company have not recovered judgments, he can not be compelled to account to them. The paragraphs relied upon read as follows:

"The deposit made with the treasurer shall be held as a security for all claims of residents of this state against such corporation, partnership or association, and shall be liable for all judgments or decrees thereon, and subjected to the payment of the same in the same manner as the property of other non-residents. Should any such corporation, partnership or association cease to do business in this state, the treasurer may release securities in his discretion, retaining sufficient to satisfy all outstanding liabilities."

If we look only to the letter of the law, and not to its spirit, and fail to take into consideration that such paragraphs are, if possible, to be made to read harmoniously with the doctrines of courts of equity, and not to curtail the powers of such courts, nevertheless the letter of the law says that the fund is to be held to pay not alone "judgments," but also "decrees thereon," and, as a decree is an order in a court of equity, the letter of the law supports the jurisdiction of a court of equity with respect to the fund, provided such jurisdiction is assumed upon the well-settled principles of equity.

If, too, the law compelled each resident claimant against this fund to recover a judgment at law, as such a proceeding would increase his claim by the costs of the action, the amount of the claims against the fund would be unnecessarily increased, and the assets of the corporation to be distributed among the creditors correspondingly diminished. I can not believe the framers of the law had any such intention in mind.

It is further contended by Cameron, treasurer, that as the defendant corporation was incorporated in West Virginia, that only the courts of West Virginia can dissolve it or wind up its business. So far as a dissolution of the corporation is concerned, I have called attention before to the fact that the proceeding here is not to dissolve the corporation. So far as winding up its business is concerned,

this proceeding is not 'to wind up its business generally, but to wind up that part of its business which has been interdicted in this state. Such business as was carried on only in this state and all of the assets connected with that business are in this state. It would be a strange proceeding and a woeful confession of incompetency upon the part of the Ohio 'courts if, under such circumstances, they should refuse to assume jurisdiction and order all parties concerned to go into West Virginia to seek relief. As no authority has been cited o sustain the position of the treasurer, I have made no search for any authority in opposition to it, because its unsoundness seems to me apparent upon its face.

For the reasons stated I am of the opinion that the demurrer should be overruled.

J. T. Harrison, W. W. Symmes and D. Thew Wright, for plaintiff and Kuhlman; L. J. Dolle, for defendant company; F. A. Lamping, for Niehaus and Brinker; J. E. Todd, Assistant Attorney General, and H. M. Hoffheimer, for Cameron, treasurer.